Stephen E. Tundel, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 8, 1979, before Judges CRUMLISH, JR., BLATT and CRAIG, sitting as a panel of three.

*William J. Fries*, for petitioner.

*Michael Klein*, Assistant Attorney General, for respondent.

OPINION BY JUDGE CRUMLISH, JR., July 18, 1979:

The Unemployment Compensation Board of Review (UCBR) reversed a referee and concluded that Stephen Tundel had been discharged for willful misconduct under Section 402(e) of the Unemployment Compensation Law, 43 P.S. §802(e),[1] and was ineligible for compensation.

We reverse.

On June 13, 1977, Tundel's employment as a counsellor at an institution housing juvenile males adjudicated delinquent was terminated. Two evidentiary hearings[2] resulted in UCBR's findings that Tundel re-

---

[1] Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

[2] Tundel appealed an unfavorable determination of his claim by the Bureau of Employment Security and appeared at a referee's hearing held July 19, 1977. The employer did not appear at the hearing and, following the referee's determination of eligibility, appealed the decision to the Board, contending that it had never been

ceived a warning in March, 1977, after missing one day's work; that, after a second unauthorized absence, he was suspended for three days in April, 1977; that he had been seen sleeping on duty "during the later [sic] part of May;" and that he had been late for work "on occasion."

Our scope of review is restricted to questions of law. We may not substitute UCBR's factual findings where supported by substantial evidence nor may we infer findings not actually made by UCBR. *Orloski v. Unemployment Compensation Board of Review*, 38 Pa. Commonwealth Ct. 174, 392 A.2d 333 (1978).

But we may determine whether the facts found by UCBR are of sufficient specificity to support the legal conclusion of willful misconduct as that phrase is used in Section 402(e). *Unemployment Compensation Board of Review v. Williams*, 23 Pa. Commonwealth Ct. 188, 350 A.2d 882 (1976); *Unemployment Compensation Board of Review v. Dravage*, 23 Pa. Commonwealth Ct. 636, 353 A.2d 88 (1976).

Mere dissatisfaction with an employee's performance will not disqualify the employee from receiving benefits upon his discharge; the employer must shoulder his burden of proof by demonstrating that a specific transgression or amalgam of transgressions amounting to willful misconduct actually precipitated the employee's dismissal. *See Houff Transfer, Inc. v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 238, 397 A.2d 42 (1979).

UCBR erred in considering evidence of Tundel's unexcused absences as supporting its conclusion of willful misconduct in light of the employer representative's testimony that Tundel's falling asleep, watch-

---

notified of the hearing. The Board vacated the referee's decision and ordered a second hearing pursuant to the Board's regulations. 34 Pa. Code §101.22. Tundel did not appear at the second hearing.

ing television and eating on the job and occasional tardiness prompted his discharge. In this context, UCBR's findings that Tundel had in the past been warned and suspended for unexcused absences are irrelevant.[3] UCBR may not in its findings rely on reasons for discharge that were not considered relevant by the employer. *Unemployment Compensation Board of Review v. Kerstetter*, 21 Pa. Commonwealth Ct. 260, 344 A.2d 743 (1975).

Thus, it is our duty to focus our inquiry on the findings that Tundel had slept on the job in late May and that he was occasionally tardy and to determine whether they are sufficient in law to support UCBR's denial of benefits.

We have held that sleeping on the job is an act of willful misconduct. In *Unemployment Compensation Board of Review v. Simone*, 24 Pa. Commonwealth Ct. 248, 250-51, 355 A.2d 614, 616 (1976), the late Judge KRAMER wrote:

> When an employer proves that an employe slept on the job, or an employe admits that he slept on the job, a *prima facie* case of willful misconduct has been set forth. . . . Absent proof that the employer either permits or tolerates such sleeping, we believe that sleeping during a period of forced idleness constitutes willful misconduct. (Emphasis in original.)

---

[3] Where an employe's absenteeism motivated the employer to fire him, a history of prior warnings or suspensions for unexcused or improperly reported absences is highly probative of notice to the employe of the employer's rules regarding absences. However, in the instant case, the fact that on two occasions Tundel was put on notice that his failure to report his absences in a prescribed manner would be inimical to his employer's interests is not probative of whether Tundel was on notice that the conduct which, as alleged, ultimately led to his discharge was inimical to his employer's interests.

The only competent evidence that Tundel had fallen asleep on the job came from Tundel who admitted to falling asleep on May 19, 1977, at 6 o'clock A.M. while working a ''double shift,'' *i.e.*, from 3 P.M. to 7 A.M. instead of his usual shift, 3 P.M. to 11 P.M. UCBR's finding that Tundel fell asleep during the latter part of May is obviously a reference to this incident recited by Tundel since the employer's representative was unable to date or document any incident of sleeping on the job in May.[4]

However, Tundel was not fired until June 13, 1977 —25 days after the incident. Considering the time span, it is unlikely that an employer would consider the specific incident to be of such grave consequence as to constitute willful misconduct. An incident of willful misconduct cannot be temporally remote from the ultimate dismissal and still be the basis for a denial of benefits. *See Unemployment Compensation*

---

[4] The testimony of the employer's representative on the issue of Tundel's sleeping on the job was replete with vagaries and hearsay:

QR   Was there any warnings ever given to the claimant in regard to his sleeping on duty or watching T.V., or sitting or eating or whatever?

AE   Yes, this was discussed with Steve by Mr. Slinchek who is the unit director, on a verbal situation.

QR   When was this, was this the last day? His sleeping on duty, sir?

AE   Well, prior to his dismissal it was not, it is not documented unfortunately.

QR   You have no idea when this happened?

AE   Mr. Slinchek stated that it was a few days prior to the termination because we discussed it and decided to terminate Steve.

. . . .

QR   Does the employer records indicate any day which the claimant, specific day, in which the claimant was charged with sleeping while on duty?

AE   No, there is no record. That's all verbal. There's no written on it.

*Board of Review v. Dravage, supra; Unemployment Compensation Board of Review v. Kells,* 22 Pa. Commonwealth Ct. 479, 349 A.2d 511 (1975). There being no explanation in the record for the delay, we hold that, under these circumstances, the May 19 incident is too remote in time to support UCBR's conclusion that Tundel's discharge was caused by willful misconduct.[5]

Finally, UCBR's finding of occasional tardiness is insufficient to support the legal conclusion of willful misconduct. While constant or excessive tardiness may be considered to be clear evidence of a conscious disregard of an employer's interests or tardiness that persists in the face of explicit warnings or enunciated standard policy may constitute willful misconduct, *see Unemployment Compensation Board of Review v. Schmid,* 20 Pa. Commonwealth Ct. 286, 341 A.2d 553 (1975), a finding of occasional lateness without concomitant evidence and findings of promulgated standard policy or warnings of the consequences will not support the denial of benefits provided by Section 402 (e).

Accordingly, we

ORDER

AND Now, this 18th day of July, 1979, the order of the Unemployment Compensation Board of Review dated December 30, 1977, denying unemployment compensation benefits to Stephen E. Tundel is reversed and the record is remanded for the sole purpose of calculating benefits.

---

[5] *Cf. Unemployment Compensation Board of Review v. Turner,* 31 Pa. Commonwealth Ct. 70, 375 A.2d 829 (1977), wherein we held that one day's delay between an incident of willful misconduct and the employee's dismissal, which was explained by the employer's desire to have the employee finish the job he had started, did not amount to the employer's condonation of the incident of misconduct so as to preclude the denial of benefits.