**Alla MELOMED, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 6, 2009.

Decided April 28, 2009.

Alla Melomed, Hallandale, FL, for petitioner.

Shawn J. Jayman, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge BUTLER.

Alla Melomed (Claimant) petitions this Court, pro se, for review of the August 11, 2008, Decision and Order of the Unemployment Compensation Board of Review (Board) denying Claimant unemployment benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Section 402(e)),[1] which pertains to unem-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

ployment due to discharge for "willful misconduct." Our review is limited to determining whether Claimant's constitutional rights were violated, whether an error of law was committed, or whether the necessary factual findings are supported by substantial evidence. *Sheets v. Unemployment Comp. Bd. of Review,* 708 A.2d 884 (Pa.Cmwlth.1998); 2 Pa.C.S. § 704. Claimant's arguments essentially raise two issues before the Court: 1) whether substantial evidence supports the Board's finding that Claimant was aware of the policy Claimant violated, and 2) whether Claimant's actions, including lying to her employer regarding the violation, constituted willful misconduct as a matter of law under Section 402(e). For the following reasons, the Board's order is affirmed.

Claimant was employed by HSBC Pay Services, Inc., (Employer) as an Account Executive from July 3, 2006, until her discharge on January 2, 2008. Claimant's job duties included coordinating with Employer's clients to obtain signatures on various documents with notarization where required. Employer's policy was that where notarization was required, the documents were to be signed in the presence of a notary. Claimant was discharged after she obtained a signature at a client's home without the presence of a notary, and subsequently returned the signed document to her branch office to be notarized by her co-worker, Employer's in-house notary. When initially confronted by her district manager, Claimant falsely represented that she had taken the co-worker with her to the client's home. After learning the truth of the matter, the district manager confronted Claimant a second time. Claimant admitted that she did not take her co-worker to the client's home, stated she did not know why she failed to do so, that she was aware she violated Employer's policy, and that she lied because she was afraid of losing her job. Claimant

now admits to violating the notarization policy and to lying to the district manager regarding the violation; however, Claimant maintains that she was unaware of Employer's policy, that at all times she was following the direction of the branch manager (her immediate supervisor), and that she lied because the branch manager instructed her to do so.

Where an employee is discharged for willful misconduct based on violation of a company policy, the employer's burden is to establish the existence of the policy, the reasonableness thereof, and that the employee was aware of the policy. *Williams v. Unemployment Comp. Bd. of Review,* 926 A.2d 568 (Pa.Cmwlth.2007). Here, there is no dispute regarding the existence or reasonableness of the notarization policy; and we conclude that there is substantial evidence of record supporting the finding that Claimant was aware of the policy she violated.

While Claimant argues she was not aware of the policy at issue, she does not dispute that Employer provided her with an employee handbook when she was hired. Claimant noted the time lapse between the dates of her hiring and firing, stated she did not recall signing anything, and argued that Employer's policies generally changed over time. Claimant concedes in her brief at page 6, however, that as late as December of 2007 she was aware that clients were to "sign the documents in front of the notary." She explains that a new branch manager was hired at that time who instructed her to obtain signatures by fax and return them to this new manager for notarization. After she did this, the district manager contacted the branch to inform that such practice was unacceptable as the policy regarding signing in the presence of a notary remained unchanged.

The Board found, based on the district manager's testimony, that when the dis-

trict manager contacted the branch regarding notarization of the faxed document, he communicated and reiterated the company policy directly to Claimant. Claimant argues that the communication took place in an e-mail between the district manager and branch manager, and that she was, thus, not made aware of the company policy. Responding to a question as to when the policy was discussed with Claimant prior to the violation at issue, the district manager stated: "it was addressed with the branch." Notes of Testimony, Feb. 28, 2008, at 9.

■ Relevant evidence is "substantial" when it is such that a reasonable mind might accept it as adequate to support a conclusion. *Pearson v. Unemployment Comp. Bd. of Review*, 954 A.2d 1260, 1264 (Pa.Cmwlth.2008). Although it is not clear that Claimant raised the issue before the Board, the district manager's testimony that he addressed "the branch" is not adequate to support the conclusion that he also directly addressed Claimant at that time. However, the district manager's testimony regarding the issuance of the company handbook, Claimant's subsequent actions in adhering to and demonstrating awareness of the policy at issue, and Claimant's attempt to conceal her violation of the policy at issue, might very well be accepted by a reasonable mind as adequate to support the conclusion that Claimant was aware that the document at issue was to be signed in the presence of a notary. Yet, Claimant contends she received subsequent conflicting instruction from her branch manager. On this point, the Board specifically discredited Claimant's testimony based on the fact that she told the district manager that she understood she had violated Employer's policy, and that she did not know why she did it. Board Decision at 3. Credibility determinations are exclusively within the province of the Board as fact finder in unemployment cases. *First Fed. Sav. Bank v. Unemploy-*

*ment Comp. Bd. of Review*, 957 A.2d 811 (Pa.Cmwlth.2008). We do not disturb the Board's credibility determination. Employer met its burden of proving Claimant's awareness of Employer's notarization policy.

Moreover, Claimant argues that she is not responsible for her violation of the notarization policy because she did not execute the notarization. Clearly, however, she knowingly participated in a scheme to violate Employer's policy by taking several steps to obtain a signature without notarization knowing full well that the signature needed to be notarized. She made no attempt to coordinate signing in the presence of a notary, and thus disregarded her Employer's interest.

More significantly, even if Claimant was unaware of the policy or could somehow be absolved of responsibility because she was not the person who actually notarized the signature, Claimant's actions constituted willful misconduct when she lied to her district manager about the work she performed. Pennsylvania Courts have long held:

> a knowing falsehood or misrepresentation to the employer concerning the employee's work constitutes a willful disregard of the employer's interest and a departure from the standards of behavior an employer can rightfully expect of an employee, and therefore is willful misconduct under the statute.

*Smith v. Unemployment Comp. Bd. of Review*, 49 Pa.Cmwlth. 394, 411 A.2d 280, 281 (1980) (citing, *inter alia*, *Miokovic v. Unemployment Comp. Bd. of Review*, 195 Pa.Super. 203, 171 A.2d 799 (1961)). Claimant admits to making a knowing misrepresentation to her employer, and offers the contention that her branch manager told her to lie to his supervisor, the district manager, as supposedly a justification or excuse for her action. Claimant states that she felt her job was threatened in that

if she did not lie for her branch manager he might fire her. This logic is speculative and unacceptable.

An employer must be able to expect an employee to be honest with the employer about the job that the employer is paying for. Contrary instruction from a manager will not be accepted as a valid excuse, particularly in a case, such as this, where a subordinate manager instructs another employee to lie to a superior manager. Purposely lying to an employer about the employee's work is willful misconduct as a matter of law under Section 402(e). Claimant is not eligible for unemployment compensation.

For the above-stated reasons, the order of the Board is affirmed.

### ORDER

AND NOW, this 28th day of April, 2009, the August 11, 2008 Order of the Unemployment Compensation Board of Review is affirmed.